IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DALE ROBERT HERINCKX and DONNA
RAE HERINCKX, as Co-Personal
Representatives for the Estate of Julianne
Lisa Herinckx, deceased,

        Plaintiffs,

   v.

PAUL SANELLE, TERLIN PATRICK, and
STANCORP FINANCIAL GROUP, INC., dba
STANDARD INSURANCE COMPANY, an
Oregon corporation,

        Defendants.

No. 3:17-cv-00201-HZ

OPINION & ORDER

Glen S. Shearer
FURNISS, SHEARER & LEINEWEBER
1500 S.W. First Avenue, Suite 700
Portland, Oregon 97225

     Attorney for Plaintiffs

/ / /

1 - OPINION & ORDER

Andrew M. Altschul
BUCHANAN, ANGELI, ALTSCHUL &
SULLIVAN, LLP
321 S.W. Fourth Avenue, Suite 600
Portland, Oregon 97204

Attorney for Defendant

HERNANDEZ, District Judge:

In an Amended Complaint, Plaintiffs Dale and Donna Herinckx, as personal
representatives for the estate of their deceased daughter Julianne, bring a wrongful death claim
against individual Defendants Paul Sanelle and Terlin Patrick, and a breach of insurance contract
claim against Defendant Standard Insurance. Altschul Decl. Ex. 11, ECF 2-11. The Amended
Complaint was filed in Washington County Circuit Court on or about January 23, 2017 and was
served, at least on Standard Insurance, on that date. *Id.*; *see also* Altschul Decl. ¶ 12, ECF 2.

Pursuant to 28 U.S.C. § 1441(a), Standard Insurance removed the action to this Court on
February 6, 2017, on the basis of federal question jurisdiction. Notice of Removal ¶ 9, ECF 1.
Plaintiffs timely move to remand the case back to state court. I grant the motion.

PROCEDURAL BACKGROUND

Plaintiffs filed this action in Washington County in November 2014. Notice of Removal
¶ 2; Altschul Decl. Ex. 1, ECF 2-1 (summons and Complaint). In Count I of the original
Complaint, Plaintiffs alleged that Julianne was living with the individual Defendants and had
named the individual Defendants as beneficiaries on a life insurance policy through her place of
employment. Altschul Decl. Ex. 1 ¶ 2. The policy was issued by Standard Insurance. *Id.*
Plaintiffs alleged that in April 2012, the individual Defendants murdered Julianne for the purpose
of collecting the life insurance proceeds of the policy. *Id.* at ¶¶ 3, 4. Although not labeled as

such, the allegations in Count I raised a tortious wrongful death claim.

In Count II of the original Complaint, Plaintiffs sought the establishment of an equitable lien or constructive trust in favor of Julianne's estate over all of the benefits and "share of any beneficiary that would otherwise pass to [an individual] Defendant" as a result of Julianne's death. *Id.* Plaintiffs prayed for more than $3 million in economic and non-economic damages against the individual Defendants individually and jointly as co-conspirators, and further prayed for the establishment of an equitable lien or constructive trust "in favor of the estate for all property, including the policy in the approximate amount of $120,000, that would otherwise pass to [the individual] Defendants, or any of them, by virtue of Standard Insurance Company[.]" *Id.* at 5.

After being served with the original Complaint, Standard Insurance contacted counsel for Patrick about joining together to remove the action based on Standard Insurance's contention that the claims against Standard Insurance were preempted by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, (ERISA). Altschul Decl. ¶ 15. Counsel for Patrick refused to join in the removal request. *Id.* Standard Insurance then moved to dismiss the claim against it based on ERISA preemption. Altschul Decl. Ex. 3, ECF 2-3. The state trial court granted the motion in a one paragraph Order dated January 27, 2015, and dismissed Plaintiffs' claims against Standard Insurance with prejudice. Altschul Decl. Ex. 4, ECF 2-4. A few days later, Plaintiffs moved to modify the dismissal Order to permit them to file an amended complaint deleting the trust claims as to Standard Insurance and adding an ERISA claim instead. Altschul Decl. Ex. 5, ECF 2-5. On March 4, 2015, the state trial court denied the motion to modify, effectively denying the motion to amend. Altschul Decl. Ex. 6, ECF 2-6. A "Limited

Judgment of Dismissal" which dismissed all of Plaintiffs' claims against Standard Insurance with prejudice, was filed on March 26, 2015.  Altschul Decl. Ex. 7, ECF 2-7.

Plaintiffs timely appealed that Limited Judgment to the Oregon Court of Appeals. Altschul Decl. Ex. 8, ECF 2-8.  On October 26, 2016, that court affirmed the dismissal of the claim against Standard Insurance, agreeing with Standard Insurance that the state "slayer statute" was preempted by ERISA, but the appellate court agreed with Plaintiffs that the trial court erred by dismissing the claim against Standard Insurance with prejudice.  Altschul Decl. Ex. 10, ECF 2-10; *Herinckx v. Sanelle*, 281 Or. App. 869, 385 P.3d 1190 (2016).  The court concluded that the trial court abused its discretion in denying Plaintiffs the ability to amend to add a federal slayer claim through ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B) and *Mutual Life Insurance Co. of New York v. Armstrong*, 117 U.S. 591 (1886).  *Id.* at 12-17.  The court reversed the Limited Judgment which had dismissed the constructive trust claim with prejudice and remanded to the trial court to allow Plaintiffs to file an amended complaint consistent with the court's opinion.  *Id.* at 17.

During the pendency of the appeal of the Limited Judgment against Standard Insurance, Plaintiffs continued to litigate the wrongful death claims against the individual Defendants. Those claims were tried to a Washington County Circuit Court jury in January 2016.  Altschul Decl. Ex. 9.  The jury returned a verdict in favor of Plaintiffs on January 8, 2016, finding each individual Defendant liable for Julianne's death and awarding $1,180,000 in economic damages and $2,204,365 in non-economic damages to Plaintiffs.  *Id.*  A General Money Judgment against the individual Defendants jointly and individually, for a total of $3,384,365, was filed in Washington County Circuit Court on February 1, 2016.  *Id.*

Following the October 2016 decision by the Oregon Court of Appeals allowing Plaintiffs to file an amended complaint, Plaintiffs filed the amended pleading in Washington County Circuit Court on or about, as noted above, January 23, 2017. Altschul Decl. Ex. 11. Plaintiffs retained the Count I wrongful death claim against the individual Defendants. *Id.* ¶¶ 1-8. The allegations in support of this claim are generally the same as originally asserted in the November 2014 Complaint. *Compare* Altschul Decl. Ex. 1 *with* Altschul Decl. Ex. 11. The changes are limited to omitting references to Oregon statutes, inserting references to ERISA statutes, and adding a paragraph asserting that on January 8, 2016, a Washington County jury found that both individual Defendants were equally at fault in causing Julianne's death.

The second claim is now a breach of insurance contract claim against Standard Insurance. Altschul Decl. Ex. 11 ¶¶ 9-18. There, Plaintiffs allege that (1) Sanelle, the primary beneficiary of the life insurance policy, was convicted of Julianne's murder; (2) Patrick, an alternative beneficiary under the policy, took the Fifth Amendment at Sanelle's trial and refused to testify; (3) Standard Insurance did not speak with detectives handling the murder investigation regarding Patrick's involvement and had it done so, it would have learned that Patrick participated in Julianne's killing and cover-up; (4) Patrick was found equally at fault with Sanelle for Julianne's death; (5) Plaintiffs requested that Standard Insurance interplead the insurance proceeds so that Plaintiffs could litigate the proper ownership of proceeds as between Plaintiffs and Patrick and Sanelle; (6) Standard Insurance did not interplead the proceeds of the policy and instead paid them to Patrick which action, according to Plaintiffs, contradicted federal law prohibiting slayers from financially benefitting from their acts in order to collect insurance proceeds on the life of their victim; and (7) Plaintiffs have made a proper claim against the policy and have not received

the proceeds from Standard Insurance. *Id.*

In the prayer, Plaintiffs pray for the sum of $3,504,360 against the individual Defendants and for a judgment against Standard Insurance in the amount of $88,192.62. *Id.* at 6. As noted above, Standard Insurance removed the case to this Court asserting that the breach of contract claim is an ERISA claim arising under federal law and supporting federal question jurisdiction.

STANDARDS

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Speciality Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003) ("Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed"). The burden of establishing federal jurisdiction is on the removing party, and the removal statute is strictly construed against removal jurisdiction. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

A notice of removal must be filed within thirty days after the defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. 28 U.S.C. § 1446(b)(1). When removal is under § 1441(a), all defendants who have been properly joined and served must join in or consent to the removal. 28 U.S.C. § 1446(b)(2)(A).

"A motion to remand is the proper procedure for challenging removal." *Konty v. Liberty Life Assur. Co. of Boston*, No. 10-cv-320-MO, 2010 WL 2608290, at *1 (D. Or. June 24, 2010)

(internal quotation marks omitted). Remand is governed by 28 U.S.C. § 1447(c) which provides, in pertinent part, that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."

## DISCUSSION

Plaintiffs raise two arguments in support of remand. First, Plaintiffs argue that Standard Insurance's February 6, 2017 removal was untimely because Standard did not remove within thirty days of the filing of the original Complaint in 2014. Second, Plaintiffs argue that removal is improper because the individual Defendants have not joined or consented to the removal.

Standard Insurance argues that the original Complaint was not removable in 2014 because one of the individual Defendants refused to consent to removal. Standard further argues that consent from the individual Defendants to removal of the Amended Complaint is not necessary because the presence of those Defendants is "fraudulent" or a "sham." According to Standard, because judgment has already been obtained against the individual Defendants, there is no possibility of recovery against them. Based on this, Standard argues that Plaintiffs included the claim against the individual Defendants solely to deprive this Court of jurisdiction. Because I agree with Plaintiffs that removal was untimely, I address only that argument.

In removing this action, Standard cites to 28 U.S.C. § 1446(b)(3) to support its assertion that removal is timely. Notice of Removal ¶ 6. That statute provides:

> Except as provided in subsection (c) [relating to diversity jurisdiction], if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

Relying on the plain language of the statute, Plaintiffs argue that the February 2017 removal of the Amended Complaint is untimely because § 1446(b)(3) applies only if the "initial pleading is not removable," and here, the initial Complaint was removable. As Plaintiffs note, Standard Insurance was served with the original Complaint and believed that the claim against it in that pleading was preempted by ERISA, indicating that on its face the Complaint presented a federal question and a basis for removal. Plaintiffs argue that because Standard did not remove the Complaint within thirty days of service, the removal now is untimely.

Citing to no authority whatsoever, Standard responds that the original Complaint was not removable because the individual Defendants who "were properly joined[,]" did not consent to removal. Def. Standard Resp. 5-6, ECF 13; *see* 28 U.S.C. § 1446(2)(A) (when a civil action is removed under § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action."). Standard's argument is that a non-consenting defendant makes an otherwise removable case, non-removable. More precisely, the argument raises the question of whether an otherwise removable initial pleading where all Defendants have been served and properly joined and there is no argument that any were fraudulently joined or are not real parties in interest, is made "not removable" within the meaning of § 1446(b)(3) by virtue of one defendant refusing to consent to removal under § 1446(2)(A).

In support of its argument, Defendant Standard might have cited to a 2007 case of Judge Haggerty's which relied on a 2002 case from the District of Maine. In Judge Haggerty's case, the plaintiff filed an action in state court seeking defense and indemnity from the defendants for defective construction claims brought by others against the plaintiff. *Interstate Roofing, Inc. v.*

*Valley Forge Ins. Co.*, No. 07-cv-01083-HA, 2007 WL 4385490, at *1 (D. Or. Dec. 11, 2007).

After service of the original *Interstate Roofing* complaint, one of the defendants indicated that it would not consent to removal. Later, the plaintiff told the defendants that the non-consenting defendant had been mistakenly named. *Id.* at 2. The plaintiff then filed an amended complaint, omitting claims against that non-consenting defendant. *Id.* The remaining defendants removed the case the next day. The plaintiff moved to remand, arguing that removal was untimely.

Judge Haggerty rejected the plaintiff's argument. In doing so, he relied heavily on *Parker v. County of Oxford*, 224 F. Supp. 2d 292 (D. Me. 2002). In *Parker*, the complaint filed in the state court asserting a federal question claim could not be removed because of a non-consenting defendant. Later, the plaintiff dismissed that defendant and provided the remaining defendants with a copy of the stipulated dismissal. Those defendants then removed the case. In denying the plaintiff's motion to remand, the *Parker* court explained that "initially all Defendants did not consent to removal. Absent such consent the case was not removable to federal court. It did not become removable until the nonconsenting Defendant was dismissed from the case." *Parker*, 224 F. Supp. 2d at 294 (citing § 1446(b)). The court ruled that under § 1446(b)(3), the defendants sought removal after they "first ascertained" that the case was fully removable which, according to the *Parker* court, was when the remaining defendants learned that the non-consenting defendant was no longer a party. *Id.* at 295.

In *Interstate Roofing*, the plaintiff argued that the non-consenting defendant was still a party because it had not yet been dismissed from the action. *Interstate Roofing*, 2007 WL 4385490, at *3. The plaintiff relied on an Alabama case in which the court found that a non-diverse party remained in the case even though that party had settled with the plaintiff. *Id.*

(discussing the plaintiff's reliance on *Holmes v. Progressive Halycyon Ins. Co.*, No. 07-0366-CG-M, 2007 WL 2028915 (S.D. Ala. July 10, 2007)). The defendant in *Holmes* had argued that the settling party became a nominal party because of the settlement agreement and thus, its consent to removal was not needed. *Holmes*, 2007 WL 2028915, at *1. But, because there had been no filing of a stipulation of dismissal or a request that judgment be entered, the court record contained no indication that the case was settled as to any party and thus, at the time of removal, the non-diverse party was not a nominal party. *Id.*

Judge Haggerty reasoned that the facts before him in *Interstate Roofing* were closer to the facts in *Parker* than to those in *Holmes. Interstate Roofing, 2007 WL 4385490, at *3.* He explained that the plaintiff's acknowledgment that the non-consenting defendant had been mistakenly named and the filing of the amended complaint dropping the claims against that defendant created "an unmistakable indication" that at the time of removal, "the non-consenting defendant should be viewed as nominal[.]" *Id.*

Judge Haggerty also rejected the plaintiff's reliance on a Florida case. He noted that the timeliness issue in the Florida case was *dicta* because the Florida court had granted the motion to remand based on the failure of the several defendants who consented to removal to show that a non-consenting defendant was fraudulently joined. *Id.* at **3-4 (discussing *Hauck v. Borg Warner Corp.*, No. 6:04CV1835 ORL 28DAB, 2006 WL 2927559, at *8 (M.D. Fla. Oct. 12, 2006)).

The court in *Hauck*, although basing the remand on its finding that the consenting defendants failed to show fraudulent joinder, nonetheless noted that the plaintiff's alternative argument about the timeliness of removal "bears mentioning." *Hauck*, 2007 WL 2927559, at *8

n.8.  In a long footnote, the court addressed the defendants' contention that the case was not removable when initially filed because of the non-consenting defendant but was timely removed under § 1446(b)(3) because it was filed within thirty days of receiving "other paper" indicating the plaintiff could not establish a claim against the non-consenting defendant.  *Id.*  The court rejected this argument, explaining that

> Plaintiff appears to be correct that the Notice was untimely.  This case, as stated by the initial pleading, was "removable" because it is a case described in 28 U.S.C. § 1441 - entitled "Actions removable generally"; it was brought in state court and of which this district court had original jurisdiction, 28 U.S.C. § 1441(b).  Thus, the portion of Section 1446(b) upon which the Defendants rely is not applicable.

> The fact that not all of the defendants consented to removal does not affect the matter's "removability" for the purposes of complying with 28 U.S.C. § 1446's procedural requirements.  Taken to its logical extension, a finding that the consent of defendants affects "removability" would mean that a defendant's change of mind about whether to consent would restart the 30-day clock.  Failure of all defendants to consent is a waivable procedural defect rather than a "removability" problem.  *See generally Hampton Paint Mfg. Co. v. Union Oil Co. of Cal.*, Civ. A. No. 91-104-NN, 1991 WL 274441, at *4 (E.D. Va. Dec.16, 1991) ("[A] distinction must be made between the prerequisites identifying a removable case and the procedures that must be followed in removing such a case to federal court. The instant case was removable under 28 U.S.C. § 1441 at its inception, as it fell within the diversity jurisdiction of the federal courts and did not fall into specific, non-procedural exceptions provided for by Congress. In order to take advantage of the opportunity to remove, certain procedural requirements had to be met: a notice of removal had to be filed within the thirty-day period provided by the statute and all defendants had to join in that notice.") (citations omitted). *But see Parker v. County of Oxford*, 224 F. Supp. 2d 292, 294 (D. Me. 2002) (concluding that case was not "removable" initially where some defendants did not consent to removal and that the case "did not become removable until the nonconsenting Defendant was dismissed from the case").

*Id.*

Judge Haggerty acknowledged that *Hauck* "offers commentary about whether the dismissal of a non-consenting defendant should 'restart' the statutory thirty-day clock for

removal.[.]" *Interstate Roofing*, 2007 WL 4385490, at *4. But, because the discussion was *dicta*, he found *Parker* to be "more persuasive and entitled to greater weight." *Id.* As a result, he concluded that the original complaint filed by the plaintiff "was not initially removable because one defendant refused to consent to removal." *Id.* With the receipt of the amended pleading deleting the non-consenting defendant, the remaining defendants were able to "first ascertain" that the case had become removable and thus, under § 1446(b)(3), removal was timely. *Id.*

Finally, Judge Haggerty agreed with the following reasoning from *Parker* regarding the consequences of adopting the plaintiff's timeliness argument, quoting it in full:

> "the Defendants acted as procedural and jurisdictional rules required: they made inquiry of all Defendants well within the time limit to determine their willingness to agree to removal; when they learned that one Defendant was not willing, they did not waste this Court's time by filing a Notice of Removal that they knew to be defective. Then, once the barrier to removal was lifted, Defendants promptly filed their Notice of Removal with the Court, along with affidavits attesting to their timely inquiries into the feasibility of removal. Defendants can hardly be faulted for endeavoring to comply with procedural requirements and, upon learning that they could not meet these requirements, refraining from filing what they knew to be a frivolous motion with this Court. Only when they knew they could fulfill all prerequisites to removal did they file their Notice of Removal with the Court. Their Notice of Removal was filed within thirty days of their discovery of [the non-consenting defendant's] dismissal, the event that made the case fully removable. It was timely filed."

*Interstate Roofing*, 2007 WL 4385490, at *4–5 (quoting *Parker*, 224 F. Supp. 2d at 294-95).

Judge Haggerty noted the difference between a "procedural defect" instead of a "removability problem" as suggested in *Hauck*. *Id.* at *5. But, he relied on *Parker* which observed that both a non-consenting defendant and a non-diverse defendant create "'barrier[s] to removability'" even though "'the former is a procedural barrier and the latter is a jurisdictional barrier[.]'" *Id.* (quoting *Parker*, 224 F. Supp. 2d at 295 n.6.). Judge Haggerty agreed with the

*Parker* court in concluding that there was "'no reason to distinguish' between a plaintiff's voluntary dismissal of a non-consenting defendant and the voluntary dismissal of a non-diverse defendant (which plainly renders an action removable)." *Id.* (quoting *Parker*, 224 F. Supp. 2d at 295 n.6).

Although *Interstate Roofing* and *Parker* support Defendant Standard Insurance's position in the instant case, Standard made no mention of either case. And, Plaintiff similarly failed to bring contrary authority to the Court's attention. As it turns out, *Parker* and *Interstate Roofing* have been rejected by two courts. Moreover, a 2006 Ninth Circuit case, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006), suggests that the Ninth Circuit would also disapprove of *Interstate Roofing* and *Parker*.

In a 2008 decision, the Northern District of Illinois began its discussion of a motion to remand by noting that the issue before it was "a question of civil procedure that would make any law school professor proud." *Mangold v. Nat'l R.R. Passenger Corp.*, No. 08 C 73, 2008 WL 4547326, at *1 (N.D. Ill. Apr. 16, 2008). There, the plaintiffs filed a state court complaint against several defendants which asserted state claims but which was properly construed as asserting a federal claim because of the presence of Amtrak. *Id.* at *1 n.1. Amtrak wanted to remove the case but could not obtain the consent of other defendants. *Id.* at *1. The plaintiffs later dismissed some of the non-consenting defendants and eighteen months after filing, the state court granted motions to dismiss brought by the remaining non-consenting defendants. *Id.* After that ruling, Amtrak removed the litigation, which had been pending in state court for more than two years, to federal court.

The plaintiffs moved to remand, contending that removal was untimely. *Id.* The court

agreed. The court first cited to § 1446(b)(1), providing that "'notice of removal of a civil action or proceeding shall be filed within [30] days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .'" *Id.* (quoting § 1446(b)). The court then cited to § 1446(b)(3) which, as noted above, provides that "'if the case stated by the initial pleading is not removable, a notice of removal may be filed within [30] days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" *Id.* (quoting § 1446(b)).

Like Standard, Amtrak argued that the presence of a non-consenting defendant made the case nonremovable and therefore, the later action of dismissing the non-consenting defendant allowed Amtrak to "first ascertain" that the case had become removable. *Id.* The court, however, noted the plain language of § 1446(b)(3) which, in the court's words, contained a "condition" "limiting the applicability of when the clock for removal may be reset." *Id.* The condition is that the "case stated by the initial pleading" must be non-removable. *Id.* The court concluded that the "case stated by the initial pleading" contained a claim against Amtrak and thus, "the condition for restarting the 30-day clock allowing removal was never met because the case stated by the initial pleading was, in fact, removable[.]" *Id.*

As the court described it, the defendants "gloss[ed] over the plain language of § 1446(b)" and instead relied on *Parker* and *Interstate Roofing* to support the position that the removal of a non-consenting defendant triggered the resetting of the thirty-day removal period in § 1446(b)(3). *Id.* at *2. The *Mangold* court disagreed with the *Parker* court's conclusion that there was "no reason to distinguish" between the voluntary dismissal of a non-consenting defendant and the

voluntary dismissal of a non-diverse defendant." *Id.* (stating that "the *Parker* court paid only nominal lip-service" to this issue).

The *Mangold* court first noted the obvious distinction between the procedural barrier caused by the non-consenting defendant and the jurisdictional barrier created by the non-diverse defendant. *Id.* The court then further explained:

> The import of the distinction becomes more clear upon examination of the purpose behind the 30-day time limit set forth in § 1446(b), which is twofold. First, it eliminates both a significant tactical advantage and the opportunity to manipulate the forum if defendants may wait to see how an action fares in state court prior to deciding to remove it. *See Wilson v. Intercollegiate (BigTen) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982); *see also Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 530 (7th Cir. 2004) ("removal statutes do not permit defendants deliberately to manipulate assignments so that the 30-day time limit on removal found in § 1446(b) can be avoided"). Second, it prevents a delay and waste of resources related to transferring fora after significant proceedings in a state court. *Id.* Indeed, as a Florida district court noted, in *dicta*, "[t]aken to its logical extension, a finding that the consent of defendants affects 'removability' would mean that a defendant's change of mind about whether to consent would restart the clock." *Hauck v. Borg Warner Corp.*, 2006 WL 2927559 (M.D. Fl. 2006).

*Id.*

The *Mangold* court found that both purposes for the thirty-day limitation were implicated. *Id.* Allowing the defendants to remove the case more than two years after state court proceedings had commenced would encourage gamesmanship and give the defendants an "immense tactical advantage[.]" *Id.* And, allowing litigation in one forum for years before removing it to another would be a "wasteful use of judicial resources[.]" *Id.* The court thus concluded that the removal was untimely and granted the motion to remand. *Id.*

In a 2016 case, the original complaint filed by the plaintiff in state court contained a federal question claim but lacked complete diversity. *Pittman v. Quest Diagnostics, Inc.*, No.

ELJ-15-3093, 2016 WL 540673, at *1 (D. Md. Feb. 11, 2016). While the case was pending in state court, the non-diverse defendants refused to consent to removal of the case to federal court based on federal question jurisdiction. *Id.* at *2. Several months after filing, the state court granted the plaintiff's motion to dismiss the non-diverse defendants. *Id.* at *1. Quest, the remaining defendant, then removed the state-filed case to federal court based on diversity jurisdiction. *Id.* The plaintiff moved to remand, arguing that removal was untimely.

Like Standard here and Amtrak in *Mangold*, Quest argued that the "initial pleading was not removable" within the meaning of § 1446(b)(3) because of the co-defendants' refusal to consent to removal. *Id.* at *4. The court started its analysis of the issue by noting that under the "express terms" of § 1446(b)(3), the thirty-day clock is "set in motion only 'if the case stated by the initial pleading *is not removable.*'" *Id.* (quoting § 1446(b)(3); emphasis in *Pittman*). Although Quest argued that the refusal of the other defendants to consent made the case "not removable" when Quest was served, the court observed that Quest's argument "overlooks that federal question jurisdiction provided a basis for removal at the outset of the litigation.'" *Id.* Again, the court referred to the plain language of § 1446(b)(3) allowing later removal only when "the case stated by the initial pleading is *not* removable[.]" *Id.* (quoting § 1446(b)(3); emphasis in *Pittman*).

The *Pittman* court cited controlling case law and a leading treatise for the proposition that "[w]hether an initial pleading is removable within under § 1446(b)(3) depends on whether a valid basis for removal *is set forth in the plaintiff's allegations*." *Id.* at *5 (emphasis added) (citing *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281 (1918) (whether a case is removable when commenced is determined by the allegations in the complaint); *Lovern v. Gen. Motors Corp.*, 121

F.3d 160, 162 (4th Cir. 1997); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002); 14B Charles Alan Wright & Arthur R. Miller*, Fed. Practice & Procedure* § 3721 (4th ed. 2009)).

The court remarked that if there had been no federal question jurisdiction at the outset of the case, the dismissal of the non-diverse co-defendants would have created diversity, and a basis for removal for the first time, allowing Quest to timely remove on that basis. *Id.* at *6. But, as initially filed, the case was removable based on federal question jurisdiction and it was the non-consent of the other defendants, not the allegations in the complaint, preventing removal. *Id.* at **6-7. This conclusion was "compel[led]" by "[o]rdinary principles of statutory construction[.]" *Id.* at *5. Under the plain meaning of the statute, the original complaint was removable at its inception based on federal question jurisdiction.

In addition to the statutory language, the *Pittman* court relied on *dicta* from a Ninth Circuit case and further found *Parker's* reasoning unpersuasive. The court noted that in a 2006 decision, Judge Kozinski wrote:

> "Where the timeliness of removal under section 1441 is at issue, it makes sense to presume that removal statutes are to be strictly construed against federal court jurisdiction. When the defendant receives enough facts to remove on any basis under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking. If the defendant can't convince his co-defendants to remove, he's stuck in state court, and later disclosure that the case is also removable on another ground under section 1441 doesn't help bring him to federal court."

*Id.* at *6 (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)).

This, the *Pittman* court stated, "supports the view that [the] case was 'removable' at inception based on federal question jurisdiction, notwithstanding that two of the defendants declined to consent to removal." *Id.*

Next, the court discussed *Parker*, including that court's analogizing to cases where non-diverse defendants are later dismissed, triggering a new thirty-day clock under § 1446(b)(3). *Id.* at **6-7. The *Pittman* court was unpersuaded:

> In my view, it is untenable to conclude that a case which, at the outset, includes a federal question and is inherently removable, nonetheless qualifies as non-removable based on a defendant's lack of consent to removal. It is not comparable to a case that lacks federal question jurisdiction until a federal claim is added or lacks diversity jurisdiction until non-diverse parties are dismissed from the suit. When, as here, a complaint filed in state court includes a federal question, defendants can first "ascertain" federal jurisdiction at that point.

*Id.* at *7.

I agree with the reasoning of the *Mangold* and *Pittman* decisions. First, as the other courts have noted, § 1446(b)(3) applies only "if the case stated by the initial pleading is not removable[.]" 28 U.S.C. § 1446(b)(3). Thus, the statutory language itself instructs that removability is considered by looking at the "case stated by the initial pleading." Removability is not determined by events, conduct, or allegations outside of the initial pleading. This is supported by the language in § 1441(a) which allows removal of a civil action filed in state court over which the district court has original jurisdiction, and by the language in § 1446(b)(1) which requires removal within thirty days of the receipt by the defendant of the initial pleading.

Second, whether a state court civil action or case presents grounds for removal is determined by looking at the allegations in the state court complaint. *E.g.*, *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006) ("the propriety of removal is determined solely on the basis of the pleadings filed in state court."); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (removability under § 1446(b) is determined "through examination of the four corners of the applicable pleadings"); *Bergen v. Tualatin Hills Swim Club, Inc.*, 170 F.

Supp. 3d 1309, 1313 (D. Or. 2016) (explaining well-pleaded complaint rule which provides that federal jurisdiction exists only when the federal question is presented on the face of the plaintiff's complaint and may not be removed based on an answer or anticipated defense (with the exception of complete preemption by a federal statute)); *Bank of N.Y. Mellon v. Barker*, No. 3:16-cv-01100-MO, 2016 WL 7326484, at *1 (D. Or. Dec. 14, 2016) (diversity jurisdiction "generally determined from the face of the complaint"; "federal question must be presented by the plaintiff's complaint as it existed at the time of removal by the defendant").

Determining removability by whether a defendant later consents or does not consent to removal is contradictory to the well-established authority holding that removability is dictated by the plaintiff's allegations in the complaint. This is true even in diversity cases or cases where the defendant asserts that joinder of non-diverse defendants was fraudulent or that a particular defendant is not a real party in interest. For example, if the face of the complaint filed in state court reveals a non-diverse defendant and there is no federal question presented, the case is non-removable based on the face of the complaint. Later discovery may provide the basis for a determination by a diverse defendant that the purportedly non-diverse defendant is actually diverse. This would allow the diverse defendant to invoke § 1446(b)(3) and remove within thirty days of when the diverse defendant first ascertained the facts revealing the diversity of the non-diverse defendant. Because the complaint on its face was not removable due to the presence of an ostensibly non-diverse defendant, § 1446(b)(3) applies.

For fraudulent or sham defendants or defendants who are not real parties in interest, a removing defendant cannot rely on § 1446(b)(3) if, at the time the state court case was initially filed, it could ascertain that a named defendant was fraudulently named or was not a real party in

interest.  As Judge Stewart explained in a 2013 case, "[i]t is well established that a plaintiff may not preclude a defendant from removing a case to federal court on the basis of diversity jurisdiction by joining parties with no real interest in the litigation."  *Dulcich, Inc. v. Mayer Brown, LLP*, 954 F. Supp. 2d 1129, 1136 (D. Or. 2013) (citing *Salem Trust Co. v. Mfrs. Fin. Co.*, 264 U.S. 182, 189 (1924) ("Jurisdiction cannot be defeated by joining formal or unnecessary parties.")).  The same is true for cases where the defendant can ascertain from the initial complaint that a party has been fraudulently joined.  *Id.*

In *Dulcich*, Judge Stewart explained that at the time the initial complaint was filed, the removing defendant "had all the information it needed to argue that [the other defendants] were not real parties in interest."  *Id.* at 1139.  There was no "sea change" after service on the removing defendant.  *Id.* at 1138.  She distinguished cases "where the defendant learns something through a later-filed document or during the course of discovery[.]" *Id.* at 1139.  The facts before her, however, did not involve "a situation where [the removing defendant] was unaware of the citizenship of critical parties or missing critical factual information" necessitating further investigation "in order to appreciate its ability to file a notice of removal."  *Id.*

In the end, Judge Stewart granted the motion to remand because the defendant could have removed within thirty days of the filing of the state court complaint which included those defendants that the removing defendant asserted were not real parties in interest.  *Id.* at 1138-39.  As such, the removing defendant could not rely on § 1446(b)(3) to start a new thirty-day clock at a later date.

As the case law shows, when the basis for removal is apparent from the face of the complaint, the thirty-day clock runs from the date the defendant receives the initial pleading

under § 1446(b)(1).  This is true even if there are fraudulently-named defendants or defendants who are not real parties in interest if the alleged status of such defendants is apparent to the removing defendant from that initial pleading.  Determining "removability" in § 1446(b) by a defendant's consent to removal is inconsistent with this case law.  The conclusion reached in *Mangold* and *Pittman* that the presence of the federal question in the initial complaint triggers removal within thirty days better reflects the statutory language and removal jurisprudence.

Third, though the passage quoted above from *Durham* is *dicta,* it is instructive.  The removal statute at issue was 28 U.S.C. § 1442 which governs cases involving federal officers.  In contrast to § 1441, which must be construed narrowly with doubts resolved in favor of remand, the § 1442 statute was to be construed broadly given that the protection of federal officers is "so important" to the federal government.  445 F.3d at 1252-53 (explaining other differences between § 1441 and § 1442 removals).  In *Durham*, federal question jurisdiction was present in the initial filing of the case in state court, but the defendant did not remove the case immediately under § 1441 because it could not obtain consent from other defendants.  Later, the defendant learned of facts establishing that removal was appropriate based on the federal officer provisions in § 1442.  It removed within thirty days of acquiring those facts based on § 1442.  The court, citing § 1446(b)(3), noted that the question was whether the initial pleading was or was not removable because if the initial pleading was "removable" within the meaning of § 1446(b)(3), the removal was untimely.  *Id.* at 1251-52.  The court stated:

> Removable is not a defined term in the statute, and there are two plausible ways to construe it in the context of federal officer removals.  First, we could interpret 'removable' as binary - either there's some basis for removal, or there's not.  Under this reading of the statute, the case was 'removable' when Lockheed received the complaint because the defendants - had they unanimously agreed to it - could have

removed the case on federal enclave grounds.  The second way to interpret 'removable' is to look at each ground for removal separately.  Under this reading, a case does not become removable until the particular basis on which removal is sought becomes apparent from the record.  Seen in this light, the case wasn't removable until Lockheed learned that it could remove the case unilaterally based on federal officer jurisdiction.

*Id.* at 1252.

Because of the broad reading required for § 1442 removals, the court "extend[ed] § 1442's interpretation to section 1446."  *Id.* at 1253.  Thus, with federal officer removals, the case is not removable until the federal officer ground for removal is disclosed[.]"  *Id.*  The holding of the case is grounded in § 1442, but the discussion strongly suggests that for § 1441 removals, the type of removal at issue here, the Ninth Circuit would narrowly interpret "removable" as it appears in § 1446(b)(3) and would adopt the more restrictive "binary" interpretation.  Thus, as Judge Kozinski explained, the thirty-day clock starts ticking as soon as there are facts establishing removal "on any basis under section 1441" and if the defendant cannot obtain consent from the co-defendants, "he's stuck in state court" with later disclosure of a basis for removal providing no grounds for later removal.

Finally, because federal courts are courts of limited jurisdiction, "'[r]emoval statutes are to be strictly construed against removal jurisdiction.'"  *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).  The strong presumption against removal jurisdiction puts the burden on the defendant to show that removal is proper.  *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.32d 1102, 1107 (9th Cir. 2010).  This "includes the burden of showing compliance with the procedural requirements for removal."  *Dulcich*, 954 F. Supp. 2d at 1136; *see also id.* at 1135 (remarking

that "[a] federal court is not permitted to play fast and loose with the procedural requirements of the removal statutes").

Based on the plain language of the statutes, case law on removal jurisdiction, and the fact that the § 1441 removal jurisdiction statute is strictly construed, I conclude that *Mangold* and *Pittman* are the better reasoned cases. Because the state court complaint was an "initial pleading" that was removable, § 1446(b)(3) does not apply and the subsequent developments in the case do not trigger a later thirty-day removal window. Defendant Standard's February 2017 removal is untimely.

CONCLUSION

Plaintiffs' motion for remand to state court [9] is granted and this action is remanded to Washington County Circuit Court.

IT IS SO ORDERED.

Dated this 12th day of May , 2017

Marco A. Hernandez
United States District Judge